35 C.C.P.A. (Patents)

## In re EVANS.

## Patent Appeals No. 5356.

Court of Customs and Patent Appeals.
Nov. 29, 1947.

Pennie, Edmonds, Morton & Barrows, of New York City (R. T. McLean, of New York City, and C. M. Fisher, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the Primary Examiner's rejection of all the claims, numbered 1 to 8, inclusive, of appellant's application for patent for a method of "Plasticizing of Vulcanized Rubber Scrap." No product claims are involved.

The brief on behalf of appellant states: "The subject matter of the invention relates to the reclaiming or plasticizing of vulcanized rubber scrap to convert it from the rubbery material with which everyone is familiar to a plastic material which can be compounded with other ingredients to produce a mixture which can be formed into shaped articles and vulcanized to produce rubber articles."

In the brief of the Solicitor for the Patent Office we find a terse statement concerning the process disclosure which reads: "The application here involved * * * relates to the plasticizing of vulcanized rubber and discloses a process which involves mechanically working vulcanized rubber scrap at comparatively low-temperatures and under oxidizing conditions, with an acid and a so-called non-accelerating plasticizing sulfide. An extended list of such sulfides is given and aryl sulfides, especially phenol sulfides, and specifically dicresyl sulfide are indicated as suitable. An accelerator and an oxidizing material may also be used if desired."

Claims 1, 3, 5, and 6 are the broad claims. Of these, claim 1 is illustrative. It reads: "1. The method of plasticizing vulcanized rubber scrap which comprises mechanically working the material under oxidizing conditions with small amounts of admixed acid material and a non-accelerating plasticizing sulfide at a temperature below about 180° F."

The specific or narrow claims 2, 4, 7, and 8 are illustrated by claim 2, which reads: "2. The method of plasticizing vulcanized rubber scrap which comprises mechanically working the material under oxidizing conditions with small amounts of admixed acid material and a phenol sulfide at a temperature below about 180°F."

It will be observed that illustrative claim 1 calls for "a non-accelerating plasticizing sulfide" of which many kinds are named in the specification, and that claim 2 specifies "a phenol sulfide." This limitation is present in claims 4 and 7. Claim 8 specifies "a dicresyl sulfide," which elsewhere in the record is said to be "a sulfide of a particular phenol, cresylic acid."

All eight of the claims were rejected by the examiner as lacking invention over any one of three patents, viz.: Seaman 1,996,001 Mar. 26, 1935; Williams et al. 2,191,266 Feb. 20, 1940; Castello 2,211,592 Aug. 13, 1940.

He further rejected claims 1 to 5, inclusive, as being "too broad and inclusive," and claims 1, 3, and 5 as being "too broad and indefinite." All the foregoing grounds were affirmed by the board.

An additional ground of rejection of claims 6, 7, and 8, which are claims of the "Markush" type, was applied by the examiner; to wit, "as being superfluous and unnecessary," but the board expressly overruled this additional ground, and it is not before us for consideration. So, it appears that claims 6, 7, and 8 stand rejected on the one ground of lack of invention over the prior art cited.

As has been indicated, the holding below is to the effect that all eight of the claims are rejectable on any one of the three references. In other words, there is no combination of references but each of the patents was regarded by the examiner and the board as being of itself a complete anticipation, or, at least, it was held that appellant presents nothing patentable over any one of them.

The examiner analyzed and applied each of the references. The board devoted most attention to the Castello patent, one or two phases of Seaman's disclosure being referred to also. The only reference to Williams et al. is found in a statement reading: "The patents to Seaman and Williams [et al.] are to an extent cumulative to the Castello patent and also deny patentability in the claims as pointed out in the statement of the Primary Examiner."

This, of course, constitutes blanket approval of the rejection on Seaman and Wil-

liams et al., but for reasons appearing from the presentation of the case before us we think more attention may properly be given to the disclosure of Williams et al. which lists some 50 or more sulfides asserted to be suitable for use in plasticizing rubber.

The fact is that appellant in his brief and in his oral argument before us practically conceded that all the broad claims, that is 1, 3, 5, and 6 read on Williams et al., his brief saying: "The term 'non-accelerating plasticizing sulfide' used in the broader claims on appeal is broad enough to comprehend the acid sulfides of the Williams patent."

The term quoted is used in haec verba in claim 2; in claim 5 the term is "a plasticizing sulfide"; and in claim 6 "an aryl sulfide" is mentioned. As has been stated, claim 6 is of the "Markush" type.

The Williams et al. patent, as is pointed out in the brief of the Solicitor for the Patent Office, "suggests operation at room temperature or at temperatures 'above about 50° C. [122° F.]'," which meets the requirement of all the appealed claims for temperatures "below about 180° F." The patent also states, in effect, that the working of the material being processed takes place in the presence of oxygen which, as said by the solicitor, "would suggest the addition of an oxidizing agent if the atmospheric oxygen were found to be insufficient."

The Williams et al. patent, however, appears to be for the treatment of crude rubber (although rubber is frequently referred to broadly in the specification), while the specification and claims of appellant's application are limited to plasticizing vulcanized rubber scrap.

The examiner held, in substance (and the board did not, expressly or impliedly, reverse the holding), that there was no invention in applying to vulcanized rubber scrap in order to reclaim it, the process applied to crude rubber "to produce," as stated by Williams et al., "a more plastic product." He held that there would be no invention because the peptizing (that is, the plasticizing) action of the sulfides would be the same in both cases.

Appellant challenges the correctness of the holding, and in the brief filed on his behalf asserts: "In this holding the Examiner assumed an equivalence between the plasticizing or softening of crude rubber and the plasticizing or reclaiming of vulcanized rubber which has no basis in the prior art, and, therefore, affords an unsound premise for the Examiner's action. There is in this record nothing to indicate that anyone had ever thought that any material useful for softening crude rubber could or would be useful for plasticizing or reclaiming rubber scrap, prior to the suggestion in the present application that non-accelerating organic sulfides generally are useful for reclaiming rubber scrap, the Williams patent having previously suggested certain sulfides as useful for plasticizing crude rubber. This is another instance in which the Patent Office has in effect used appellant's teaching as a reference against him."

Before passing upon the issue relating to the Williams et al. patent, we deem it proper to look to the Castello patent which, like the application of appellant, is limited to the treatment of vulcanized rubber, such as worn rubber tires, inner tubes, mechanical goods, etc., for the purpose of reclaiming the rubber and putting it into a plastic condition suitable for use in the manufacture of new rubber articles.

Appellant's brief says of the Castello patent (page reference omitted):

"This patent * * * describes the reclaiming of vulcanized scrap rubber by working it in the presence of a small quantity of a vulcanization accelerator, that is, one of the materials (of which a large number are known) commonly incorporated in rubber stocks to be vulcanized to promote the speed of the vulcanization or reduce the temperature required. The patent describes the use of temperatures below 180° F. for the working, and also describes the use of various materials in addition to the vulcanization accelerator, including rosin, stearic acid, and other materials, *some of which may be regarded as acids within the scope of the claims of the present application.* (Italics supplied.)

* * * * * *

"The distinction between what is described in this patent, and the subject mat-

ter broadly claimed in the present application, lies in the use of a non-accelerating sulfide in the process of the application and the use of a vulcanization accelerator, which in some instances may be a sulfide, but not a non-accelerating sulfide, in the process of the patent."

The board compared the patent with the application, pointing out that the mastication process of the patent is performed in the air, and, therefore, under oxidizing conditions; that rosin, one of the ingredients named by applicant, which in the patent is admixed with the rubber scrap, is an acid material; that an alternative for rosin disclosed in Example III of the patent is a higher fatty acid (specifically stearic acid) which meets the "rosin" and "higher fatty acid" disclosures of the application; and that the patent suggests the use of various sulfides.

The board then said: "The methods recited in the claims on appeal, therefore, differ from the method disclosed in the Castello patent only in two respects, one being that the sulfide used is 'a non-accelerating plasticizing sulfide'; 'a phenol sulfide'; 'a plasticizing sulfide'; 'an aryl sulfide' or 'a dicresyl sulfide' and the other being that 'an accelerator or vulcanization' is specified as an additional ingredient of the mixture according to claims 3 and 4. We do not find that these differences confer patentability on the claims. The prior art, as exemplified by the Castello patent for example, discloses the use of sulfides as plasticizers in the process claimed and the selection as plasticizers of sulfides which are 'non-accelerating' does not amount to invention. The application on appeal discloses an exceeding extensive list of sulfides which may be used and this emphasizes the lack of invention in the substitution of any one of them for the sulfide used in the prior art process. We are not impressed with the allegation that a 'non-accelerating' sulfide should be selected since applicant states that in addition to excluding sulfides which contribute accelerating properties, an accelerator of vulcanization may also be added."

So far as appellant's use of a vulcanization accelerator (specified only in claims 3 and 4) is concerned, the examiner stated: "* * * it is comon to add sulfur accel-

erator, etc. to reclaimed rubber," and this statement of the examiner does not appear to be challenged.

Both the Williams et al. and the Castello patents, as of course, were applied by the tribunals of the Patent Office to both the broad and narrow claims of appellant. Reserving the narrow claims for later discussion infra, we state at this point that we share the view of the tribunals of the Patent Office, in regard to the broad claims, but it seems to us that the applicability of the Williams et al. patent to those claims is clearer than is the applicability of the Castello patent. Hence, we have given the former patent more notice than the board gave it.

We are not unmindful of the contention on behalf of appellant to the effect that no art has been cited showing that any one prior to appellant ever suggested that a process useful in plasticizing crude rubber would also be useful in plasticizing vulcanized rubber scrap, but it seems to us that the two substances—rubber and rubber scrap—are so clearly related in nature that there could be nothing inventive in applying the Williams et al. process, defined broadly in the specification as a process of "treating rubber," to the treatment of rubber scrap. Aside from this it may not be overlooked that the Castello process like that of appellant is limited to rubber scrap.

Appellant's brief states: "The fact is, and it is comon knowledge, that crude rubber has been plasticized or softened in rubber factories to permit the incorporation in it of the ingredients used to make rubber articles and has then been vulcanized, and that rubber scrap has been treated to produce a reclaimed product, and that these two operations have gone on on an enormous scale practically side by side for decades."

We doubt if judicial notice properly may be taken of the condition so described, but, even if it may, it may be pointed out that there is no showing in the record as to just what processes have been applied to the respective substances in the operations which have gone on "side by side for decades."

It is true that there are expressions in appellant's specification which may be con-

strued to support the statement in appellant's brief that "reclaiming processes heretofore widely used for rubber scrap have been either the heater process or the digester process," but so far as we can determine from the record there is nothing to show that those processes might not be employed in the treatment of crude rubber. However, if it were shown that those particular heater and digester processes might not successfully be so used, it is not thought that this would demonstrate that the process of the Williams et al. patent would not work as effectively in the treatment of rubber scrap as it does in the treatment of crude rubber.

The board rendered two decisions in the case, the second being in response to a request for reconsideration limited to the specific claims 2, 4, 7, and 8, the first three of which are limited to the use of phenol sulfide and the last to the use of dicresyl sulfide, which latter is itself said to be related to phenol.

It should be borne in mind that, as stated earlier in this decision in a quotation from the brief for appellant, appellant's contention with respect to the difference between his claimed invention and the Castello patent lies in his use (1) of a non-accelerating sulfide and (2) of a vulcanization accelerator, the latter of which already has been passed upon, supra.

As to the former, if we correctly understand appellant's position, it is that the sulfides disclosed by Castello are all accelerating sulfides. So far as the broad claims 1, 3, 5, and 6 are concerned, he does not make this contention with respect to the Williams et al. patent, but he does make it as to the narrow or specific claims 2, 4, 7, and 8, because phenol sulfides and dicresyl sulfides are not non-accelerating sulfides and Williams et al. do not name either of them.

The broad claims, we think, have been sufficiently discussed.

So far as the applicability of the prior art is concerned neither the examiner nor the board, in its first decision, separated the narrow claims from the broad claims for general discussion, but in its second decision the narrow claims were discussed at considerable length.

It will be borne in mind that appellant's contention as to the broad claims reading on the Williams et al. patent did not apply to the narrow claims 2, 4, 7, and 8.

We deem it unnecessary to set forth the board's discussion in full. Notwithstanding the fact that neither phenol sulfide nor dicresyl sulfide is designated eo nomine in any one of the reference patents, the board held, in substance, that because of the broad disclosure by the prior art of the use of organic sulfides including sulfides and disulfides, so many of which are named in the different references "there would be no invention in selecting phenol sulfide or dicresyl sulfide" for use in the Castello process for plasticizing vulcanized rubber. The board said further:

"There is nothing in the application on appeal to indicate any remarkable or critical action by the selection of phenol sulfide or dicresyl sulfide, which are included within the broad disclosure of the prior art, instead of one of the numerous sulfides specifically mentioned therein.

"The Primary Examiner has indicated in his statement that the 'non-accelerating' function of phenol sulfide or dicresyl sulfide, in connection with vulcanizing unvulcanized rubber, is a function not related to its function as a plasticizing ingredient for vulcanized rubber and we find no error in such a position."

Appellant's arguments have been carefully considered but we are not convinced that the board erred in its conclusion based upon the applicability of the prior art cited, and in view of this conclusion it is unnecessary to pass upon the rejection based upon breadth, and indefiniteness.

The decision of the Board of Appeals is affirmed.

Affirmed.